NO. 07-07-0027-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 20, 2008
_____

SHANE ALLEN MCCOY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 69TH DISTRICT COURT OF MOORE COUNTY;

NO. 3825; HONORABLE RON ENNS, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Shane Allen McCoy, was convicted of the offenses of aggravated sexual assault of a child and indecency with a child and sentenced to 25 years confinement and fine of $500 on the sexual assault count and 10 years confinement and a fine of $500 on the indecency count. The terms of confinement were to run concurrently. Appellant has filed his appeal claiming, through four issues, that the trial court committed reversible error by denying a motion for new trial wherein it was alleged that trial counsel provided

ineffective assistance by failing to call certain specified witnesses who were available at the time of trial. We affirm.

## Factual Background

Appellant was charged in connection with an incident that occurred while on a family fishing trip at Lake Meredith. The complaining witness was appellant's then 12-year-old step-daughter. The testimony presented by the State included April Lemming, the managing interviewer at The Bridge Children's Advocacy Center. Lemming testified about the complainant's statements about the sexual assault at the lake. Lemming further testified about an incident that complainant told her about that occurred at complainant's home when appellant put his hands on complainant's breasts while sitting on the couch with her. Through Becky O'Neal, the sexual assault nurse examiner, the State was able to show that an examination of complainant revealed that complainant's hymen was torn and had begun to heal. O'Neal further testified there was no way to tell when the hymen had been torn, other than by the testimony of complainant. Complainant's grandmother, Belen, testified about her suspicions regarding appellant and about a confrontation she had with him. According to Belen, appellant did not deny the incident, rather, appellent simply stated he could not remember because he was drunk.

The complainant testified that, while she and appellant were casting a bait net along the shore of Lake Meredith, appellant grabbed her by the "boobs" and "butt." A short time after the touching incident, the complainant alleged that appellant pulled his shorts down and told her to lay on the ground. According to complainant's testimony, when the

2

complainant refused, appellant, pulled complainant's shorts down, picked her up, and then laid her on the ground. Complainant testified that appellant then laid on top of her, penetrating her sexual organ with his sexual organ. Complainant testified appellant stayed on top of her for about five minutes and then she pushed him off. Complainant was subjected to rigorous cross-examination during which appellant's trial counsel attempted to show that the complainant had previously made allegations about a teacher improperly touching her and that the allegations were not true. In fact, complainant was forced to admit as much when confronted with conflicting stories she had given. At the conclusion of the complainant's testimony, the State rested its case-in-chief. Appellant rested without presenting any additional witnesses. The jury found appellant guilty of both counts.

After the jury trial and resulting convictions, appellant filed a motion for new trial. The motion for new trial alleged that appellant's trial counsel's performance had been deficient for failing to call certain witnesses, each of which, according to appellant, were available at the time of trial and would have provided evidence favorable to the appellant. The trial court overruled appellant's motion for new trial and it is from this ruling that appellant appeals.

Standard of Review

We review the granting or denial of a motion for new trial under an abuse of discretion standard. Charles v. State, 146 S.W.3d 204, 208 (Tex.Crim.App. 2004). As the reviewing court, we do not substitute our judgment for that of the trial court, rather we decide whether the trial court's decision was arbitrary and unreasonable. Id. Further, we

3

must view the evidence in the light most favorable to the trial court's ruling and presume all reasonable factual findings that could have been made against the losing party were made. Id. Accordingly, a trial court abuses its discretion by denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. Id.

Ineffective Assistance of Counsel

In the present case, we will apply the aforementioned standard of review for denial of a motion for new trial to appellant's contention that his trial counsel was ineffective. Claims of ineffective assistance of counsel are measured against the two-prong standard of Stickland v. Washington. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex.Crim.App. 1986) (adopting Strickland as applicable standard under Texas Constitution). Under the first prong of the Strickland test, an appellant must show that counsel's performance was "deficient." Strickland, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. To be successful in this regard, an appellant "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Under the second prong, an appellant must show that the deficient performance prejudiced the defense. Id. at 687. The appropriate standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Appellant must prove both prongs of Strickland by a preponderance of the

4

evidence in order to prevail. Tong v. State, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000); McFarland v. State, 845 S.W.2d 824, 842-43 (Tex.Crim.App. 1992).

When applying the standards of Strickland, we are mindful that, as an appellate court, we are to be highly deferential and presume that counsel's actions fell within the wide range of reasonable and professional assistance. Bone v. State, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002). Therefore, appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Ex parte Ellis, 233 S.W.3d 324, 330 (Tex.Crim.App. 2007). In reviewing the conduct of trial counsel, we are directed to analyze the totality of the representation. Thompson v. State, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Finally, we must remember that we are not to make these determinations by application of hindsight. Id.

Analysis

The totality of appellant's argument is that trial counsel was ineffective because he failed to call four specific witnesses who were available at the time of trial and whose testimony would have been beneficial to appellant. However, there are several flaws in appellant's arguments.

First, appellant's theory completely discounts the testimony of his trial counsel at the motion for new trial hearing. At that hearing, both lead counsel and co-counsel testified at length about the efforts expended in investigating the case against appellant and conducting interviews with witnesses. According to this testimony, appellant's trial counsel interviewed 20 witnesses and six expert witnesses. Also, trial counsel testified that the

5

cross-examination of the complainant had significantly compromised her credibility and that counsel did not feel appellant's case could get any better. This opinion was seconded by co-counsel. Trial counsel explained that they wanted the evidentiary portion of the trial to end on a high note for appellant and the cross-examination of the complainant was the high note they were looking for. As such, the decision of counsel can be considered sound trial strategy. Ellis, 233 S.W.3d at 330.

Second, trial counsel had valid reasons not to call the witnesses about which appellant complains. As to Matthew McCoy, the record of the motion for new trial hearing demonstrates that his testimony was somewhat inconsistent with the interview taken from him at the Bridge Children's Advocacy Center. Additionally, there are questions regarding the perception the jury would have of Matthew's testimony, such as his motive for testifying, his ability to comprehend the events of this case, and the effectiveness of a nine-year-old defending his father. The record reflects that trial counsel's decision to refrain from calling Matthew was based on a number of different factors. All of these factors are matters within the professional judgment of trial attorneys. As such, they would all be classified as matters of trial strategy. Id.

Regarding the testimony of Yvonne McCoy, the record again reflects that a conscious decision was made that the benefit of her testimony was outweighed by the perception a jury would have of her motives for testifying. Counsel was concerned that she would be presented as defending her breadwinner against her daughter. Therefore, the decision not to call her as a witness can be accurately described as trial strategy. Id.

6

Leo Ramos's testimony was presented via an affidavit in which he stated that he was present when his wife, Belen, had her encounter with appellant. Ramos said that appellant did not say he was drunk and could not remember what happened on the night in question. However, during the motion for new trial hearing, there was affirmative testimony of trial counsel that the affidavit of Ramos was completely at odds with how trial counsel's investigation before trial revealed Ramos would testify. Specifically, trial counsel testified that Ramos had, before trial, never indicated that appellant did not make the statements that Ramos's wife, Belen, attributed to him. Further, the State produced evidence that Ramos had told the prosecutors that he was present when appellant made the statements to his wife and had heard appellant admit he had been drinking while taking his medication and, therefore, did not remember what had occurred on the evening in question. The record does not support any conclusion that Ramos's testimony would have been beneficial to appellant. Therefore, a decision to refrain from calling Ramos would not, even if assumed to be deficient for Strickland purposes, have prejudiced appellant. Strickland, 466 U.S. at 694.

Regarding the testimony of Nell Yocum, trial counsel testified that Yocum's statements to him were not as definitive as those made in the affidavit produced at the motion for new trial hearing. Additionally, much of the affidavit testimony would have been subject to objection by the State and its ultimate admissibility is far from certain. See TEX. R. EVID. 412. Therefore, the decision not to call Yocum can, like the other witnesses, be fairly attributable to trial strategy. Ellis, 233 S.W.3d at 330.

7

Because the decisions made by trial counsel were either part of a trial strategy or did not prejudice the appellant, we cannot say that the trial court abused its discretion in denying appellant's motion for new trial. <u>Charles</u>, 146 S.W.3d at 208. Because the trial court did not abuse its discretion, we overrule appellant's issues.

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.